May it please the court, my name is Alan Feierstein, and I'm appearing on behalf of Sarah Lynn Doolin this morning. The case before this court essentially centers on two separate issues. However, the district court, although presented with two issues, only really decided one of the issues of it before. Judge Bartle was presented with the question of lack of diversity, but he clearly did not address it in his opinion, did he? No, Your Honor, and that was the second issue that I was going to address, even though the district court didn't address it. I do not consider that issue to even be before the court at this point. Well, we have an independent duty to examine not only our own jurisdiction, but the jurisdiction of the district court. Now, the question was raised in the motion filed by Mr. Himes. I understand that in his red brief, he has agreed with you until being asked by this court to address the question, and he has shifted ground. But regardless of the party's position, we're required to look at that. And one thing that strikes me, if my research is correct, is that while it is not binding on us, there is at least an opinion of the district court of the Virgin Islands that declares that the hospital that is a party in this matter is an arm of the Virgin Islands government. Isn't that correct? Your Honor, I agree with the court. However, I think under the circumstances of this case as presented to the court procedurally, because it was a motion under 12B rather than a Rule 56 motion for summary judgment, that the allegations that were contained in the plaintiff's complaint should have been considered in a light most favorable to the plaintiff. Isn't the court, this court, isn't the district court more pertinently under an obligation at the earliest possible point to examine its own jurisdiction? I agree with that, Your Honor, and I think that in order for the district court to examine that issue with respect to immunity, that there were certain factual issues that would have had to have been raised, would have had to have been addressed. There should have been depositions. And there's no record to that extent, is there? There is no record. Why should we not simply remand this to the district court for a determination made pursuant to creation of whatever record is required? And we certainly have plenty of jurisprudence that indicates what ought to be considered for purposes of whether or not an entity is an arm of the state. And let the district court make that determination. Your Honor, I agree with you. There should be a remand on that issue. And I would also point out to the circuit court that the hospital is not alone as a defendant. The hospital may be entitled to a certain level of immunity as a result of its relationship with the government. But the question also comes up as to what is the relationship of Dr. Kaysen, of Dr. Moorman as employees of that hospital, and are they entitled to be cloaked also with immunity if the hospital in fact is? Well, irrespective of that, we need complete diversity, don't we? I agree with that. And if the hospital is an arm of the government, then we lack complete diversity. That is correct, Your Honor. Was there a statement to that effect that the hospital is an arm of the state and that you conceded to it? I mean, in other words, you did not disagree with that assertion. Your Honor, I did disagree with that assertion. And it was based upon the limited discovery and the amount of information that came to us and in analyzing that in relation to other cases involving sovereign immunity. We learned that the hospital is independent. We learned that it has a separate board of governors. We learned that it is a for-profit institution. We learned that they sue to collect their debts. And I believe that the three-part test that was articulated in the Third Circuit with respect to sovereign immunity indicates that the government and the hospital must be so intertwined as to make them essentially one. In this case, they are not. They are not separate to the immunity that is afforded the government. My note is that you, in fact, conceded that the hospital is owned by the government of the Virgin Islands, but you say that's not correct. I believe that it is owned by the government, but they have completely separate and distinct functions. Separate bylaws, separate governance? Precisely. And, in fact, in the documents that we were able to obtain, they were calculating that their profits would be in the millions of dollars. But for what it's worth, and I will concede that this is probably not dispositive, but it's still a factor, you've got Section 3409 that explicitly states that government of the Virgin Islands includes, quote, Virgin Islands government hospitals and health facilities. I do, Your Honor, and I concede that. Your Honor, should I address the second issue? The second issue is based upon statute of limitations. Pardon me. And in this case, the court on a motion to dismiss, admittedly a motion to dismiss, because I think in the first paragraph of the court, the second paragraph of the court opinion, it said it is not a motion for summary judgment. Because it's a motion to dismiss, the court was obligated to assume that the facts as articulated in plaintiff's complaint be construed in favor of the plaintiffs. Incredibly, however, what the court did was acknowledge that a number of dates that were in the record would cause the plaintiff's causes of action to be barred as a result of statute of limitations. But there doesn't seem to be one date which is a given, and that was the date at which you traveled to try to get a second opinion in a consult. The September 9th of 2005 date, when – and if we look at what happened chronologically, all of this makes sense. This is a very logical way to analyze this case. But a logical way to analyze the case also should not be substituted for what the true facts are. In this case, this is a woman who discovered that – That's a very interesting statement, Mr. Ruth. And I have to agree with you. Given some of the arguments we've heard, I've got to agree with you. Your Honor, practically speaking, this is a woman who was faced with a very serious condition that she found herself. She found that she had an anomaly in her breast tissue. As a nurse, she went to the hospital and she wanted to make sure that there was nothing to respond to. And they took a biopsy. The biopsy went to the lab. Dr. Case and Dr. Moorman examined the tissue, or maybe the lab examined the tissue, and they said, ma'am, you've got cancer. You have cancer. And in a panic, what does she do? She goes to other doctors, who maybe she trusts a little bit more than the doctors at the Juan Luis facility. And the doctors on June the 9th of 2005, I believe that was the date of the Kentucky appointment, they indicate that you don't have a cancerous anomaly. You don't have tissue that's infected. Did she learn that the same day that she got to Kentucky? In other words, if she got to Kentucky June 9th of 2005, that's when the lumpectomy was performed? There is no evidence of that yet. All right. Is that when she went to Kentucky? I believe it is now. Of my own knowledge, I do not know when she got the information from Dr. Gerald Ebbs in Owensboro, who reviewed it and saw no evidence of cancer. Well, the discovery issue is an important one here, it seems to me. And there's no question about that, Your Honor. But it can be established, I think, fairly easily because you would get a report or a lab report or information or some statement in writing from the Kentucky doctors. But let me go further, Your Honor, in stepping into the shoes of the plaintiff, and I think that's the important issue, and I'm trying to now address the issue that was raised by Judge McKee. Practically speaking, here we have a woman who has a positive diagnosis from a lab, and now she has a negative diagnosis from a lab. Which one is she going to believe? When does she discover? And that's the issue, that she has a cause of action that exists. Well, Your Honor, that is an excellent point because it's easy to read this. Well, once she got the negative lab report, at that point she was on notice. But, in fact, that's not true. There's a 50% chance that the negative lab report is wrong. That is precisely my point, Your Honor. And when we're dealing with an issue of such significance in a woman's life who is in a panic. Did she rest on the report from the Kentucky doctors or hospital, or did she get a subsequent report to confirm the negative diagnosis? I believe that there were subsequent tests that showed that the negative diagnosis that was performed in Kentucky was accurate, and they retested again. I do not have personal knowledge of this. I believe that she made up her mind. It was her belief after that September date. Can we say at some point, I guess it would be after June the 9th, that she was satisfied that the initial positive result was inaccurate? That is correct, Your Honor. The date of accrual is an issue of fact. The date of accrual is, in my opinion, not an objective test. It is a subjective test. It was when did she know? When did she discover? And that is the date. I'm sorry? When should she have known? When did she know or when should she have known? Or when should she have known. And that is the issue. The mistake that I believe. Why isn't the issue, help me with something, why isn't the issue focused as Judge Bartle did on the pre-filing condition? I grant the sum of very, very unfortunate facts here. Unlike my colleagues who are more attuned to the direction we're going, I'm not clear as to why Judge Bartle was wrong, assuming we get by the diversity jurisdiction question, why he was wrong in his application of the pre-filing condition here. Your Honor, I have reviewed the statute in detail. I've reviewed the case law that is applicable to the statute. Every case that I find that is on point relates to the motion to file late with respect to the Medical Malpractice Act. This is not an issue. We didn't make a motion to file a malpractice case late. It is our position that we filed the medical malpractice claim on time. It was timely. What happened in this case is that we commenced suit, according to Judge Bartle, late. And that was based upon Judge Bartle's assumption that the cause of action was due on September 9th. And we say that is incorrect. That is not an assumption that the Court should have made, and that requires that there be reversal, remand, and discovery with respect to the appeal date. How do you explain, then, that 90-day requirement between the filing of a Certificate of Merit and the filing of the ultimate complaint? Your Honor, I'm going to answer that in a very practical way, the way a practitioner of law answers that type of question in a way that I think is reasonable. When a practitioner gets a case like this and the statute is going to run in his mind, because he doesn't know when it accrued, because he's got a discovery issue like this, the smart thing to do is to file that malpractice claim as soon as you can, which is what plaintiff's counsel did in this case. As soon as we knew that there was a claim that was filed. As a very good practitioner, you knew that you had this 90-day window that you had to afford the defendants to consider the claim. We knew that the defense would come in and say that the statute of limitations was an early one rather than a later one. Rather than wait the 90 days for the time to expire, and the statute says to allow the defense the opportunity to secure an expert medical opinion, which in two decades of practice in the Virgin Islands, I've never seen, not once. It is just another stumbling block or hurdle that is used in order to impair a claimant's rights. But notwithstanding that, Your Honor, as a careful practitioner, I say file that claim if that issue is going to be raised, and what is the harm if you stay for 90 days or until it's completed? Can we stay it though? I mean, isn't the 90-day requirement jurisdictional? Your Honor, I think that there is case law saying that it is jurisdictional. However, I think practically speaking if you take a look at the circumstances of every case that is filed in malpractice in the Virgin Islands, yes, it says 90 days. Well, that raises an interesting question, which frankly I don't think either side has addressed. That is, in invoking the term jurisdictional, the case law that exists, I believe, holding that the 90 days is jurisdictional, is pre-Contract v. Bryan and the cases that followed it, which make distinctions between that which is jurisdictional and that which is a claim processing. And it seems to me that if we got to that question, we probably have to examine whether indeed this 90-day requirement is jurisdictional or whether it is a claims processing rule, the latter of which can be waived effectively. And, Your Honor, I agree. And I don't think there is a case that's on point with respect to that issue. Well, you know, if the discovery – if what you claim as to the discovery rule, that her discovery of the harm might have occurred a bit later than she – than is stated here, which is it had to happen after June of 2005. Is that correct? Yes, Your Honor. But we don't know when. So the statute of limitations might not have run. I think what you're saying is that of an abundance of caution, you decided to file that complaint right away. You couldn't wait 90 days, even though it's conceivable that you could have waited 90 days. There's a petitioner. I couldn't see what the harm was. So you filed the complaint earlier. I mean, usually lawyers are criticized for filing them too late. But you have that 90-day period. So what is the remedy? Number one, where is the harm to the government? There isn't any. If, in fact, they are going to go out and get an expert opinion and adjust the claim. But you're attacking a legislative requirement, aren't you? I mean, at first blush, I'll concede your point. What's the harm with filing early as opposed to filing too late? But I can also hear the answer to that being that as part of reform of Med-Mal litigation, what we want to do is try to head off claims being filed at all by first requiring this report from an IME or whoever it really is who's providing this medical opinion as to malpractice well known, right? I mean, isn't that what's behind all this, to try to weed out the malpractice claim that's frivolous and shouldn't have been filed in the first place? Well, Your Honor, I think that that's probably the theory behind malpractice reform. But practically speaking, what it does is it eliminates the ability of people who have got viable claims that ordinarily wouldn't be pursued and gives them the death penalty. It sounds like it's the sort of thing that exists in all states. Filing certificates of merit or certificates of eligibility within 90 days of filing the suit, whether it's against doctors or lawyers and maybe even architects. So there should be an abundance of jurisprudence out there that might support your view. And I think your view is that maybe we can toll this 90-day period in light of the discovery issue and what's the harm, there's no prejudice, et cetera. But I don't know of any case that supports the idea that if this is a statutory provision,  under equitable factors, presumably. Well, I don't know that toll the provisions is exactly the proper terminology. What I was saying is stay the proceedings. And I think the court does have jurisdiction because it's an administrative claims process to stay that so that the 90-day hearing can expire and then the complaint can be pursued. You mean stay the proceedings, stay the complaint? Yeah. All right. So it's sort of like suspending the complaint and allowing 90 days to go forward and then deem it to be filed 90 days thereafter. Exactly. What prevents counsel in that situation? And I agree that situation can arise as it seems to be presented here where if you wait the 90 days, you're past the statute of limitations, right? What's to prevent the parties from in an effort, parties plural, in an effort to avoid that entering into an agreement to waive the statute of limitations? In the absence of an agreement, then you come in with some kind of motion to extend. Well, Judge, I think we're right back to the stumbling block issue that you just mentioned. Effectively what happens because of that 90-day period is that it shortens the statute of limitations from two years to one year and nine months. That effectively would seem to be the practical effect of the statute. That's what struck me immediately. And it's a trap. It's a trap for the unruly plaintiff. I think. None of the other legislation knew that enough. They clearly were amending the statute of limitations from then on. That's exactly what happens. That's the practical effect, particularly in this case. It doesn't make a lot of sense. Thank you very much. Thank you. Good afternoon. Good afternoon. May it please the Court, James L. Himes III for the FLEs. I hope I can address all these issues. Let's take the last one first. The statute of limitations in medical malpractice cases is two years minus 90 days, and there is case law that has made that decision so that the practitioner who is going to file a medical malpractice case has to be aware that you don't have the normal two years to do this because there is the mandatory time frame within which you have to file and then wait 90 days before you commence your litigation. And the filing is of a proposed complaint with the Medical Malpractice Action Review Committee. Once that's filed there, you must wait 90 days and then commence your lawsuit in court. Counsel misspoke on the accrual of a date. It was not June 15. June 15 is the date that he submitted his proposed complaint to the Medical Malpractice Action Review Committee. He then filed his case in court 13 days later, not waiting the 90 days, and I believe it is for this very reason that Judge Bartle says you did not follow the strict filing requirements of the statute. They are jurisdictional. There is no jurisdiction in this Court to hear this case and dismiss it. It's a remarkably harsh result. I can't help thinking about that. What is also harsh is that you can't toll the 90-day provision or I have found no jurisprudence that supports it. But what about this idea that really the cause of action might have occurred later than is assumed in this case, which was when she went to Kentucky? But even assuming that's the case, the mistake in the case was filing his lawsuit the 13 days after he filed his proposed complaint. But that's only if the procedure is not a case processing procedure. We have had these very issues raised to our courts here in the Virgin Islands that there should be a curing process that's been rejected. But we haven't looked at it yet. Excuse me? We have not looked at it yet. No, you haven't. Our courts have in Massar and in Charles, cases that we've cited in our brief. The very same arguments that EEOC cases, clean water cases that allow for you to file and then cure and then go ahead with your case. But if the statute says the Clean Water Act cases, that's a little bit different. The statute's not the same. Correct. I think our statute is more analogous to the Federal Tort Claims Act, and that has been interpreted very clearly to be jurisdictional and must wait. But what if in an appropriate case, maybe this is it, maybe it isn't it? It seems to me if a plaintiff could show what Mr. Kirsten just represented, that in how many odd years he's stated he's been handling these cases here, there's never been an instance where the defendant has come in with a cone of reeling affidavit. It would seem to me that's heavy evidence and may be considered as evidence that what we have here really is a claims processing procedure because otherwise we have a procedure which is gobbling up the substance to such an extent that it makes no sense. If the statute of limitations is two years and you abridge it by three months to allow for what appears to be a logical procedure to weed out medical malpractice claims, then in fact it's not serving that purpose at all. All it's doing is preventing those plaintiffs who do have legitimate concerns and injuries from getting into court on time. We should look at that. The way the courts look, we look at EDPA. For a while there was an issue about whether or not it could be equitably told in a one-year period under the statutory one-year period of filing a habeas under EDPA. Totally different, I know, but it wasn't at all clear. It was a statutory imposed by Congress one-year date. We took the position, as did some other circuits, that it could be equitably told. The Supreme Court just recently said yes, it can be equitably told. Maybe this is a situation where it just cries out for equitable tolling. I'm not sure that it couldn't be shown that that wasn't the intent of the legislature. If that wasn't the legislative intent, no court can do it. I'm not so sure that that wasn't the intent of the legislature. I just don't know. Our statute is not preventing people from filing lawsuits. Our statute says you must file your proposed complaint, wait 90 days. If no expert report is produced by the committee, then you may go ahead and file. At the very least, the practical effect of this, if not the legal effect of this statutory scheme, is, as I believe you said at the outset, to reduce the statute of limitations from two years to effectively one year and nine months. Right? Two years minus 90 days. 90 days. 90 days is three months. I'm sorry. I thought you said six months. One year and nine months is what I meant if I didn't say it. So legislatures can do that if they choose to, right? They know they're doing it. And I think if there are going to be changes to that statute, it needs to be done by the legislature, because we're talking here about a waiver of sovereign immunity. Do you have a comparable or analog to this 90-day notice provision? I know that you have the provisions where you sue a city, a municipality, or a government entity, but that comes 90 days before, and it doesn't cut short the two-year period, because you're doing that within 90 days of the occurrence of an event. Do you understand what I'm saying? I do. And that doesn't cut the two-year period to file the complaint, but this one tends to do that, doesn't it? It does. But you say it's okay because the legislature says it's okay. You raised the question, is this the proper case to do this? These events occurred in 2005, and she is filing her complaint, her proposed complaint, two years and less than nine months, more than nine months later. Who's sitting on their rights? Is it the plaintiff? Is it her counsel? We don't know. But this is not the case where someone has to. Mr. Thurston makes a very good point, because I was focused on that September 9 date. It did seem to me that as of September 9, 2005, when you get the negative lab report back, you're going to notice that the first lab report was wrong. But I think Mr. Thurston is dead right about that. You're not. You're not at all. You know that one of those lab reports was wrong, and clearly if it were me and we've got one doctor in an institution that I work at, and maybe that means I trust it more, maybe that means I trust it less. That doctor is saying I've got cancerous tissues. Another lab report that I selected, I'm assuming because of some reputation, says I don't have cancerous tissues. That makes me incredibly apprehensive, and I want to find out which one is right, but it doesn't mean that as of September 9 I knew the first one was wrong. It doesn't mean that at all. It just means that you've got to go further, and we don't know right now, I guess, at the state of the record, we don't know what that line is in terms of further, when the plaintiff had enough information by going further that she realized the first lab report was wrong. Unless you're arguing that the inconsistency suggested that the first one was wrong, but I really don't think that that's argument that can prevail. Well, that suggests that the 90-day notice was not filed too late. The complaint was filed too early. Correct. So why don't we – I mean if you can consider equitable factors in tolling, why don't we just consider, as Mr. Feinstein says, consider the complaint was suspended and consider it to be filed later? I think the reason you don't do that is – As long as discovery yields, confirms that there was a two-year period from the discovery, which we don't know yet, to the filing of the complaint. But we have a series of cases that say it's jurisdictional. You've got to follow the statute as it was drafted and enacted by the legislature, and it says you've got to file a proposed complaint, wait 90 days, and then file your case in court. But what if his mistake doesn't relate to the 90-day filing requirement? What if it relates to the complaint itself and you filed too early and maybe still within the statute of limitations? That's not this case. Well, I'm not sure it is or it isn't, quite frankly. I don't know why that argument is dead wrong. You can't change the 90-day requirement. It's statutory, but he says I made a mistake. I filed that complaint too early. My client discovered that her condition was not cancerous well beyond the date of the reports that we have before us here. And what would your position be if she found out on September 10th or the same day? You're not allowed to ask me questions. I'm sorry. You see what I'm saying? She sat on her right. We had the attorney yesterday who said the same thing, that we weren't allowed to ask him any questions. He preferred not to answer them. But I think my point is that we've got a statute here that's been interpreted before. It's jurisdictional. Judge Bartle. Maybe it's jurisdictional. What would your position be with respect to jurisdictional versus whether or not it invokes, it presents a claims processing rule? I would say if it presents a claims processing rule, the legislature should so say. And it has not said that. Clearly it's not said that. What they wanted to set up was a procedure by which claims could be settled before cases were filed. That sounds like claims processing. That sounds exactly like claims processing to me. But it's a framework within the claims are to be processed, and you can't jump the gun or else the courts don't have jurisdiction to hear your case. It's a framework that was established by the legislature. It may result in harsh results. But that's what we're in the business of doing, enforcing the law as it was drafted and enacted and fairly for all purposes. Thank you very much. You want to touch on very briefly the issue of the hospital and diversity of jurisdiction issue? Well, the hospital clearly – there is no complete diversity from my standpoint. I don't think Judge Bartle's even got to that. I think he looked at the complaint as filed. Well, he didn't. The opinion just simply doesn't address that. But you raised it, right? Right. I raised it. But I think what he said was this case, I don't have before me a validly filed complaint because it was not filed in accordance with the statute. Therefore, I don't have jurisdiction. I don't have to get to the diversity issue. But that's not – with all due respect to Judge Bartle, who's a very good judge, that's not the order in which this situation should be analyzed when what is at stake is actually subject matter jurisdiction pursuant to the diversity statute. That's what should be looked at first prior to a Virgin Islands statute. If there's no diversity, the case should be dismissed. The hospital is not independent. It is run in partnership with an entity that's in the resource case that's been referred to. It's not making a profit. The members of the board are appointed for the most part by the governor, seven out of nine members. They can be removed by him. It's an agency for all practical intents and purposes of the government, and the government is going to pay any judgment that is entered against it. So the real party and interest is the government of the Virgin Islands. So it is not an independent, stand-alone entity for suit purposes for the diversity jurisdiction case. Thank you. Thank you. Do we have time for a briefing? The difficulty that I have with respect to the second issue, which I'm calling the equitable polling, or the request that a stay be imposed with respect to the medical malpractice statute limitations, is that it is very, very difficult for a practitioner, for a judge, to know when, under these circumstances, a cause of action has accrued. That's because the issue really is with respect to the discovery. Discovery of what? I mean, isn't that really what's at stake here, that the discovery of a conflict in medical opinion or something more developed than that, which would mean the cause of action accrues further down the line? I agree with you completely on that. It's a difficult issue. I think it's an issue of personal practice. Obviously, what any good counsel is going to do is what you did here, and a good plaintiff's counsel is, I ain't going to take that risk. I'm going to file sooner rather than later. That's exactly what we did, Your Honor. It's the first time I've ever been criticized for filing too early rather than too late. It's the flip side of the early bird. I've always thought that people say the early bird catches the worm, but they don't realize that the early worm gets caught. It doesn't necessarily make a lot of sense to get out there early. The lesson is don't be a worm. Your Honor, the only other point that I would raise with respect to the issue of the government's immunity is I would, and I know this case is not binding on this court, but I found it very instructive when I started analyzing it, and that is the case that comes out of the unfortunate event that happened over at Virginia Tech. The court in that case went through a very, very detailed, thorough analysis as to whether the state of Virginia is entitled to immunity, as to whether the various agencies, the Community Services Board were entitled to immunity, whether the employees are entitled to qualified immunity. Were you at the site of that? I have it as 210-VA-CIR-Lexis-7, and it was decided on January 12th of 2010. What it does is it underscores the need to take a look at each one of the actors to make sure that they are either entitled to this immunity or not entitled to this immunity. So even if Attorney Hines is correct with respect to the hospital, it does not insulate Drs. Moorman and Drs. Cassidy. Thank you very much. Thank you. Excuse me, counsel, for a second. Did you?